Filed 10/30/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re Marriage of KELLY and RUSSELL FURIE. | B269972 |
| | (Los Angeles County Super. Ct. No. PD048281) |
| KELLY FURIE, Respondent, v. RUSSELL FURIE, Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Susan Lopez-Giss, Judge.  Affirmed.

Russell Furie, in pro. per., for Appellant.

Law Offices of Rosenthal & Associates and Lisa F. Rosenthal for Respondent.

_____

This appeal centers on Russell Furie's (father) request for the trial court to enter an order reducing his child support obligations and Kelly Furie's (mother) request for an order regarding the couple's children's orthodontic care and expenses.[1] The trial court denied father's request to reduce child support, found that father controls the Douglas Mae Trust (the Trust), ordered father to pay the requested orthodontic expenses, and granted mother sole authority to make decisions regarding the children's orthodontic care.[2] We affirm the trial court's orders.

## BACKGROUND

Mother and father married on November 2, 1996. Their first child, K.F., was born in January 1998, and M.F. followed three years later. Mother petitioned the trial court in August 2009 to dissolve the marriage. Six months later, the trial court

---

[1] Father moved this court to incorporate the clerk's and reporter's transcripts from his earlier appeal, No. B241754, into the record on this appeal. We provisionally granted that motion subject to reconsideration. The motion is granted.

Father also filed two requests for judicial notice in December 2016, both of which we granted. Mother moved the court in March to augment the record, and we granted her motion.

Father filed two additional requests for judicial notice in May 2017. Pursuant to Evidence Code section 459, we grant the requests. No document attached to either of these requests for judicial notice is of "substantial consequence to the determination of the action," as that phrase is used in Evidence Code section 459, subdivisions (c) and (d).

[2] The trial court made no other changes in custody rights or parental authority or control over the children.

entered a stipulated judgment for legal separation incorporating a settlement agreement.[3]

## A. The Stipulated Judgment

The judgment awarded father and mother joint legal custody of the children, and ordered father to maintain health insurance for the children and to pay $1,454 per month in child support, half of school or child care costs, and half of uninsured medical expenses. The judgment awarded the family home to father, who was to continue to maintain and pay all debts concerning the home, but also provided that mother and the children could continue to live there with father until M.F.'s 18th birthday. Mother and father both waived spousal support, and the trial court retained no jurisdiction to later award spousal support.

Mother and father were also each awarded various community assets. Among other property, the stipulated judgment awarded father all of KMF Investments Inc. (KMF) and RKF Investments Inc. (RKF).

Unfortunately, the parties have a tortuous postjudgment legal history as set forth in part below.

## B. Default on the Family Home Mortgage

Within months of the stipulated judgment, father purchased a condominium free and clear and moved out of the family home, defaulting on the mortgage. To protect the family home, mother requested an order in February 2011 increasing father's support obligations.

---

[3] In April 2012, father filed his own petition for dissolution (L.A. Super. Ct. case No. PD053955). The trial court related the two cases. There is nothing in the record indicating whether the marriage has been dissolved.

Both in his papers and at the hearing on mother's motion, father argued the parties had orally agreed to modify the terms of the stipulated judgment by giving KMF and its assets to mother and releasing father from his obligation to provide for the family home. At the hearing on March 29, the trial court ordered father to bring the mortgage current by April 29 and to begin paying mother an additional $4,709 per month to cover the mortgage.

Father filed a motion for reconsideration under Code of Civil Procedure section 1008. On his motion for reconsideration, father's arguments about KMF evolved; contrary to his earlier arguments, father *now* contended that mother had converted KMF's assets for herself.[4] Mother opposed the motion and sought sanctions for having to defend against the motion. The trial court denied both the motion for reconsideration and—citing father's in propria persona status—the motion for sanctions in a statement of decision and order dated June 24, 2011.[5]

---

[4] Father issued an Internal Revenue Service Form 1099 to mother each tax year from 2012 to 2015 for $8,750 per year based on his allegation that she had "illegally transfer[red]" KMF to herself.

[5] The trial court's order on mother's motion to modify support did not specify whether the additional $4,709 was child support or spousal support. The June 24 statement of decision on the motion for reconsideration, however, referred to that amount as spousal support.

## C. Father's Request to Reduce Child Support and Mother's Request to Convert Spousal Support to Child Support

In July 2011, father settled the Trust and transferred his condominium and RKF, among other assets, into it.[6] Around the same time, father requested an order modifying the parties' stipulated judgment, again contending mother took KMF's assets and in return released him from his obligation to pay the mortgage on the family home. (*In re Marriage of Furie* (Mar. 28, 2014, B241754) [nonpub. opn.] at p. 5 (*Furie I*).) Separately, he sought an order modifying the custody (father later withdrew this request) and child support orders. At a hearing on August 26, 2011, the trial court denied father's motion to modify the stipulated judgment without prejudice and continued the hearing on custody and support orders. (*Ibid.*)

While father's request to reduce his support obligations was still pending, mother filed a request for an order correcting the May 27, 2011 spousal support order to reflect that the $4,709 was *child* support to maintain the family home. At the January 27, 2012 hearing on the two motions, father again raised—and the parties exhaustively discussed—mother's alleged conversion of KMF's assets.

In its statement of decision and order filed March 6, 2012, the trial court denied mother's request to redesignate the spousal support award in the trial court's May 27, 2011 order and denied father's request to reduce his support obligations. The trial court vacated its order granting $4,709 in monthly spousal support, recalculated father's child support obligations, increased the

---

[6] Since settling the Trust, father has sought to have all of his sources of income deposited directly into the Trust.

5

monthly child support award to a total of $2,136 per month, and awarded mother attorney fees as sanctions.

Father moved the court to reconsider its March 6 order, and again attempted to relitigate his KMF allegations. After the trial court denied the motion for reconsideration and again awarded sanctions to mother's counsel, father appealed both the March 6, 2012 order increasing his support obligations and the order denying his motion for reconsideration.

**D.      March 18, 2013 Turnover Order**

While the first appeal was pending, father, as the sole shareholder of RKF, sold the assets of an RKF-owned business, Check by Check, to his father, Leonard Leeds. Mother filed a request for an order requiring father to turn over the promissory note Leeds gave RKF to partially satisfy father's child support arrearages. The trial court heard mother's motion on February 7 and filed a statement of decision on March 18, 2013 ordering father to immediately turn over the RKF promissory note to mother and to contribute an additional $1,000 to mother's attorney fees as a sanction for father's litigation conduct.

**E.      Father's Bankruptcy**

On March 28, 2013, father filed a bankruptcy petition (Bankr. C.D.Cal. case No. 2:13-bk-18101-BR). Mother filed an adversary complaint against father alleging, among other things, father had fraudulently induced her to waive spousal support. The bankruptcy court entered a non-dischargeable judgment against father on December 18, 2014, finding he had defrauded mother and awarding her $452,064 in damages. The court also determined father's support obligations and attorney fees the family court had previously awarded were non-dischargeable.

**F.     Remand After First Appeal and Father's New Request to Reduce Support**

In March 2014, we remanded the case to the trial court to reconsider the allocation of medical insurance expenses in its child support calculation, but otherwise affirmed the trial court's March and May 2012 orders.  (*Furie I*, *supra*, at p. 20.)

After we remanded, father filed another request for the trial court to reduce his support obligation, yet again contending mother had converted KMF.  The trial court heard father's request in 2014 on June 3, August 7, August 11, and December 17, and in 2015 on January 29.  At the December 17, 2014 hearing, the parties agreed father's support arrearages were $30,020.32 and the trial court ordered father to begin paying $250 per month toward the arrearages beginning January 1, 2015.  At the January 29, 2015 hearing, the trial court denied father's request to reduce his support obligation.

**G.     Proceedings At Issue in This Appeal**

**1.     Father's Renewed Request to Reduce Support or Vacate or Reconsider March 18, 2013 Turnover Order**

In August 2015, father filed a motion styled as a request for an order modifying child support.  Father's papers, however, asked the trial court to either vacate or reconsider the trial court's *March 18, 2013* statement of decision (ordering him to turn over an RKF promissory note to mother) based on his perception of findings he contends the bankruptcy court made when it issued his bankruptcy discharge in 2014.[7]  Attempting to

---

[7] Father cited *In re Marriage of Oliverez* (2015) 238 Cal.App.4th 1242 (*Oliverez*) in his papers in the trial court. *Oliverez* was an appeal after a trial court reconsidered another trial judge's order on its own motion under Code of Civil

7

reduce his stipulated support arrearages, father again argued that mother had converted KMF's assets for herself.

### 2. Mother's Request for Sole Legal Custody

In September 2015, mother filed a request for the trial court to modify its child custody and visitation orders based on father's refusal to co-parent on orthodontic issues and for an order reimbursing her for half of uninsured expenses she incurred for K.F. and M.F.'s orthodontic care.

### 3. The Trial Court's Orders

At a hearing on November 12, 2015, the trial court issued an oral statement of decision. The trial court followed that with a written order on December 30. The trial court declined to vacate or reconsider the March 18, 2013 order, determined the parties had stipulated to the amount of arrearages and declined to adjust the stipulated amount, found that father controls the Trust, ordered father to pay half of K.F. and M.F.'s expenses for uninsured orthodontic care, gave mother sole authority over K.F. and M.F.'s orthodontic care, and denied father's request to reduce his child support obligations. The trial court ordered no other custodial modifications.

**\* \* \***

Father timely appealed the trial court's December 30, 2015 order.

## DISCUSSION

Father alleges five bases of trial court error. First, he contends the trial court erred by not issuing a written statement

---

Procedure section 1008. (*Oliverez*, *supra*, 238 Cal.App.4th at p. 1247.) On appeal, however, father cites only Code of Civil Procedure section 663, which governs motions to vacate erroneous judgments.

of decision after the November 12, 2015 hearing, by awarding mother sole authority over K.F. and M.F.'s orthodontic care, and by determining that father controls the Trust. Next, he argues the trial court erred by declining to vacate or reconsider the March 18, 2013 statement of decision on mother's request for a turnover order and sanctions. Finally, he asks this court to order the trial court to conduct a hearing regarding his allegations that mother converted KMF and its assets for her own benefit.

Father's in propria persona status relaxes the restrictions neither on our discretion nor on the permissible scope of our review. Neither may we hold litigants in propria persona to different standards than we hold attorneys. (Cf. *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 985 ["requiring or permitting exceptional treatment of parties who represent themselves would lead to a quagmire in the trial courts, and would be unfair to the other parties to litigation"].)

## I. Statement of Decision

Father argued in his opening brief that although he requested a statement of decision from the trial court pursuant to Code of Civil Procedure section 632 and Family Code section 3654, the trial court did not issue one. Mother explained that section 632 expressly allows the trial court to issue an *oral* statement of decision, which mother contends the trial court did. On reply, father argued Family Code section 3654 required the trial court to issue a *written* statement of decision. We agree with mother.

Father's contentions raise questions of statutory interpretation, which we review de novo. (*Fry v. City of Los Angeles* (2016) 245 Cal.App.4th 539, 549.)

9

Father relies on Family Code section 3654 and *In re Marriage of Sellers* (2003) 110 Cal.App.4th 1007 (*Sellers*) to support his argument that the trial court was required to issue a written statement of decision. Family Code section 3654 states: "At the request of either party, an order modifying, terminating, or setting aside a support order shall include a statement of decision."

In *Sellers*, the trial court (a) invoked Family Code section 3654 by modifying spousal support, and (b) did not issue *any* statement of decision even though a party requested one. (*Id.* at pp. 1009-1010.) Here, the trial court gave an oral statement of decision on the record in the parties' presence and expressly *declined* to either modify, terminate, or set aside a support order. We need not decide whether section 3654 requires a written statement of decision for orders that fall within its scope because the order here does *not*. And Code of Civil Procedure section 632 required the trial court to do no more than it did. (Code Civ. Proc., § 632; Cal. Rules of Court, rule 3.1590(n).)

## II. Orthodontic Care – Costs & Authority

Father relies on Family Code sections 4062 and 4063 to argue the trial court abused its discretion when it found that he owes mother half of the amount of K.F. and M.F.'s orthodontic care as uninsured medical expenses. We disagree.

We review a trial court's order for reimbursement of uninsured healthcare expenses for abuse of discretion. (Cf. *In re Marriage of Rothrock* (2008) 159 Cal.App.4th 223, 236.) "When two or more inferences can reasonably be deduced from the facts, we will not substitute our deductions for those of the trial court. [Citation.] The burden is on the complaining party to establish abuse of discretion. [Citation.] The showing on appeal is

10

insufficient if it presents a state of facts that affords only an opportunity for a difference of opinion. [Citation.] [¶] We limit our review of the trial court's findings of fact to determin[e] whether they are supported by substantial evidence. [Citation.] 'On review for substantial evidence, we examine the evidence in the light most favorable to the prevailing party and give that party the benefit of every reasonable inference. [Citation.] We accept all evidence favorable to the prevailing party as true and discard contrary evidence.' " (*Id.* at p. 230.)

Family Code section 4065 allows parties to agree to child support orders in lieu of orders based on the statutory formula. (*In re Marriage of Laudeman* (2001) 92 Cal.App.4th 1009, 1013.) Father and mother did so here. The stipulated judgment states that father will be responsible for half of any medical expenses not covered by insurance. The court-approved stipulated judgment does not invoke section 4062 or 4063, nor does it require the trial court to consult those sections to determine whether particular costs fall within their scope. Those sections are inapplicable.[8]

Here, the only question the stipulated judgment required the trial court to answer was whether the medical expenses were covered by insurance. The trial court determined they were not, and substantial evidence supports that determination. Mother testified about the steps she took to seek in-network orthodontic

---

[8] The result would be no different if Family Code sections 4062 and 4063 applied. The trial court made the findings necessary to support an award of additional child support under sections 4062 and 4063, and substantial evidence supports those findings.

11

care and produced documentary evidence supporting that testimony. The trial court did not abuse its discretion.

Father also contends the trial court abused its discretion by awarding mother sole authority over K.F. and M.F.'s orthodontic care. We find no abuse of discretion.

The parties and the trial court have framed this issue in terms of *custody* over the minors' orthodontic care.[9] A trial court's order modifying custody is "appropriate only if the parent seeking modification demonstrates ' "a significant change of circumstances" indicating that a different custody arrangement would be in the child's best interest.' [Citation.] But the changed circumstance rule does not apply when a parent requests only a change in the parenting or visitation arrangement not amounting to a change from joint custody to sole custody, or vice versa. Instead, the trial court considers a request to change the parenting or visitation arrangement under the best interests of the child standard." (*In re Marriage of Lucio* (2008) 161 Cal.App.4th 1068, 1072.)

The Family Code establishes two broad categories of custody; legal and physical. (Fam. Code, §§ 3003 et seq.) "Legal custody," which encompasses "the right and responsibility to make the decisions relating to the health, education, and welfare of a child," obviously includes orthodontic care. (Fam. Code, §§ 3003, 3006.) But the trial court's order does not amount to a

_____

[9] Father also contends the issue amounts to a termination of his parental rights. Even "an award of sole legal and sole physical custody of a child to one parent does not serve to 'terminate' the other's parental rights or due process interest in parenting." (*In re Marriage of Brown and Yana* (2006) 37 Cal.4th 947, 958.) The trial court's order had no impact on father's parental rights.

change of legal custody; father continues to share joint legal custody with mother.  (See *In re Marriage of Birnbaum* (1989) 211 Cal.App.3d 1508, 1513.)  The only change is that mother now has sole authority concerning orthodontic care.

While this issue has more frequently arisen in the context of physical custody and visitation, we see no reason to require a "changed circumstances" test when a modification amounts to something less than a change of legal custody.  We hold, therefore, that the appropriate standard for ordering a modification in parenting authority that does not rise to the level of a change in legal custody—as with physical custody—is the *best interests of the child* standard, regardless of any alleged change in circumstances.  Orthodontic care clearly falls into the best interests of the child standard.

"A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)  After the trial court issues a statement of decision, as in this case, Code of Civil Procedure section 634 requires a party to "state any objection [he may have] to the statement in order to avoid an implied finding on appeal in favor of the prevailing party.  The section declares that if omissions or ambiguities in the statement are timely brought to the trial court's attention, the appellate court will not imply findings in favor of the prevailing party.  The clear implication of this provision, of course, is that if a party does not bring such deficiencies to the trial court's attention, he waives [his] right to claim on appeal that the statement was deficient in these regards, and hence the appellate court will imply findings to support the judgment.  Furthermore, section 634 clearly refers to

13

a party's need to point out deficiencies in the trial court's statement of decision as a condition of avoiding such implied findings, rather than merely to request such a statement initially as provided in section 632." (*In re Marriage of Arceneaux, supra,* 51 Cal.3d at pp. 1133-1134, fn. omitted.)

Although the trial court did not expressly find that the modification was in K.F. and M.F.'s best interest, father did not object or note the omission.  We affirm the trial court's order granting mother authority over the children's orthodontic care and ordering father to pay half of their uninsured orthodontic expenses.

## III.   Father's Control of the Trust

Father argues the trial court abused its discretion when it determined he was in control of the Trust.  Father contends the issue was not properly before the trial court, and that he could not have received a discharge in his bankruptcy if he controlled the Trust.  We will affirm the trial court's order.

Father couches some of his arguments in collateral estoppel terms because, he explains, the bankruptcy court determined he does not control the Trust.  "Collateral estoppel precludes the relitigation of an issue only if (1) the issue is identical to an issue decided in a prior proceeding; (2) the issue was actually litigated; (3) the issue was necessarily decided; (4) the decision in the prior proceeding is final and on the merits; and (5) the party against whom collateral estoppel is asserted was a party to the prior proceeding or in privity with a party to the prior proceeding." (*Zevnik v. Superior Court* (2008) 159 Cal.App.4th 76, 82 (*Zevnik*).)

Father offers no factual or legal support for his assertion that the bankruptcy court found he was not in control of the

14

Trust. Neither has our review of the record disclosed such a finding.

The bankruptcy trustee filed two adversary complaints against father; one for denial of discharge under title 11 United States Code section 727(a)(4)(A) and (a)(2)(A) and one to avoid fraudulent transfers under sections 548 and 550. The complaints alleged father had concealed property, including his condominium and his interest in RKF, by transferring it to the Trust for no consideration, fraudulently transferred his interest in a check cashing company to his father within the year before he filed bankruptcy, and failed to disclose the existence of the Trust and his interest in the Trust in his bankruptcy filings. The bankruptcy court entered judgment for father on both complaints, finding "the trustee failed to establish the grounds asserted for objection to the debtor's discharge" on the section 727 complaint and "failed to establish any claim for relief under §§ 548 and 550." The record contains no other bankruptcy court findings.

"Section 727's denial of discharge is construed liberally in favor of the debtor and strictly against those objecting to discharge." (*In re Adeeb* (9th Cir. 1986) 787 F.2d 1339, 1342 (*Adeeb*).) To prevail on a cause of action for denial of discharge under title 11 United States Code section 727(a)(4)(A), "a plaintiff must show, by a preponderance of the evidence, that: '(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently.'" (*In re Retz* (9th Cir. 2010) 606 F.3d 1189, 1197 (*Retz*).) In *Retz*, the Ninth Circuit explained that a debtor " ' "acts knowingly if he or she acts deliberately and consciously." ' " (*Id.* at p. 1198.) There, the debtor "deliberately and consciously signed [bankruptcy forms] knowing that they

15

were incomplete." (*Ibid.*) To prove the requisite fraudulent intent, the plaintiff must show that the debtor made the representations, knew they were false when he or she made them, and made them " 'with the *intention and purpose of deceiving the creditors.*' " (*Id.* at p. 1199, original italics.) "Reckless indifference or disregard for the truth may be circumstantial evidence of intent, but is not sufficient, alone, to constitute fraudulent intent." (*Ibid.*)

"Section 727(a)(2)(A) provides that a debtor shall not be granted a discharge if within one year of the filing of a petition in bankruptcy he 'has transferred, removed, destroyed, mutilated, or concealed' his property 'with intent to hinder, delay, or defraud a creditor.' " (*Adeeb, supra*, 787 F.2d at p. 1342.) Under title 11 United States Code section 548, the trustee may avoid a transfer within two years of the bankruptcy if the debtor made the transfer to "hinder, delay, or defraud," or, among other circumstances that do not apply here, if the debtor "was insolvent . . . or became insolvent" because of the transfer when it was made, or "intended to incur . . . debts that would be beyond the debtor's ability to pay as such debts matured." (11 U.S.C. § 548(a)(1)(A), (B)(i), (B)(ii)(I), (B)(ii)(III).)

These bankruptcy court cases, then, contained a number of elements—any one of which could have derailed either of the trustee's complaints—that had nothing to do with whether father controlled the Trust. And the record before us contains no information about which elements of the trustee's complaints the bankruptcy court found dispositive. It was also not necessary for the bankruptcy court to make any factual finding about control of the Trust to grant father a discharge. (See 11 U.S.C. §§ 548(a)(1)(B)(ii)(I), 727(a)(2)(A), 727(a)(4)(A).) We therefore

16

disagree with father about the effect of his discharge in bankruptcy on the proceedings below in this matter.

Father also contends the trial court had no jurisdiction to determine whether he controls the Trust at the hearing on his request for a reduction in his child support obligation. We disagree.

After father requested a child support modification alleging changed circumstances, the trial court was *required* to determine what resources were available to father to satisfy his child support obligations. (Fam. Code, §§ 4005, 4008, 4011, 4058.) And the trial court has discretion to enter "any . . . order as the court in its discretion determines from time to time to be necessary" to enforce child support obligations. (Fam. Code, § 290.) In any hearing related to father's child support obligations and his failure to meet them, father is on notice that his finances are subject to the trial court's scrutiny.

Finally, father contends the Trust's spendthrift clause and its purported irrevocability puts the Trust off limits to creditors, including his children. Again, we disagree.

The trial court explained in its statement of decision that Probate Code sections 15304 and 15305 allow the trial court to reach the Trust to satisfy father's child support obligations, arrears, and attorney fee awards. Probate Code section 15304, subdivision (a) explains that if a trust's settlor is also a beneficiary *and* if the settlor's interest is subject to a spendthrift clause, that clause is "invalid against [the settlor's] transferees or creditors . . . ." Subdivision (b) allows *any* transferee or creditor to reach the maximum amount the trustee could pay for the "education or support" of the trust's settlor as long as the amount

17

does not exceed the settlor's proportionate contribution to the trust.

Father is the Trust's settlor and sole beneficiary. He contributed all of the Trust's assets.

Section 15305, subdivision (c) specifically allows the trial court to order the trustee "to satisfy all or part of [a] support judgment out of all or part of future payments that the trustee, pursuant to the exercise of the trustee's discretion, determines to make to or for the benefit of the beneficiary." The trial court can make that order without regard to who controls a trust and "notwithstanding any provision in the trust instrument." (Prob. Code, § 15305, subds. (c) & (d); *Ventura County Dept. of Child Support Services v. Brown* (2004) 117 Cal.App.4th 144, 155.)

The trial court did not abuse its discretion when it allowed mother to reach the Trust to satisfy father's child support obligations and the trial court's earlier orders.

## IV.    Vacatur or Reconsideration of March 18, 2013 Order

Father contends the trial court (Judge Susan Lopez-Giss) erred by declining to vacate or reconsider the March 18, 2013 statement of decision and order on mother's request for a turnover order and sanctions—entered by a different trial judge (Judge Michael Terrell) who was transferred out of the department—because the bankruptcy court's judgments in father's favor collaterally estopped the trial court from entering the March 18, 2013 order.

In the trial court, father based his argument on *Oliverez*, *supra*, 238 Cal.App.4th at page 1247, which dealt with a trial court's discretion to reconsider another judge's ruling under Code of Civil Procedure section 1008, a scenario "usually only appropriate when the prior judge is unavailable." *Oliverez* noted

18

that " '[W]here the judge who made the initial ruling is unavailable to reconsider the motion, a different judge may entertain the reconsideration motion.' " (*Id.* at p. 1248 [modification in original].)  In the trial court, father focused exclusively on that language.[10]

Here, however, father relies on Code of Civil Procedure section 663, which allows the trial court on a party's motion to vacate a judgment or decree and enter "another and different judgment" because either an "[i]ncorrect or erroneous legal basis for the decision, not consistent with or . . . supported by the facts" or "[a] judgment or decree not consistent with or . . . supported by the special verdict" entitles the moving party to a different judgment.  (Code Civ. Proc., § 663.)

Whether the motion was to reconsider or to vacate, the result is the same.  An August 24, 2015 motion to vacate or reconsider a statement of decision and order from 2013 would have been untimely under Code of Civil Procedure section 663a or 1008, subdivision (a).  The trial court would have been without jurisdiction to consider *either* motion.

Father's reliance on collateral estoppel is also misplaced. The bankruptcy court's orders were filed on July 7, 2014, more than a year *after* the order father asked the trial court to vacate or reconsider.  Collateral estoppel serves only to preclude *re*litigation of an issue, not to overturn orders entered before the relied-upon order.  (*Zevnik, supra,* 159 Cal.App.4th at p. 82.)

---

[10] Transfer to another department of the same superior court does not render a judge "unavailable" for purposes of Code of Civil Procedure section 1008.  (See *Oliverez, supra,* 238 Cal.App.4th at p. 1249, fn. 4.)

19

## V. KMF

Father contends that we should order the trial court to conduct a hearing about whether mother converted KMF or its assets.

Father has exhaustively presented his KMF argument to the trial court in a variety of contexts. He raised it in response to mother's February 2011 request to increase child support (heard Mar. 29, 2011), in his motion to reconsider the trial court's ruling on that request (heard June 24, 2011), in a July 2011 request to modify the stipulated judgment (heard Aug. 26, 2011), in response to mother's request to convert a spousal support order to child support and father's simultaneous request to reduce his support obligations (heard Jan. 27, 2012), in his motion to reconsider the order on those motions (heard May 18, 2012), in a request after our remand in father's first appeal for the court to reduce his support obligation (heard June 3, Aug. 7, Aug. 11, and Dec. 17, 2014 and Jan. 29, 2015), and again in a request to reduce his child support obligations filed in August 2015 (heard Nov. 12, 2015). Further, father briefed and we noted the status of KMF and father's allegations on father's first appeal to this court. (*Furie I*, *supra*, at p. 5 ["Father asserted that he agreed to accept responsibility for the family home debt obligations in the Judgment only because of the expected income from KMF Investments as represented by Mother and that he no longer had ownership of KMF Investments' assets because Mother had dissolved KMF and removed its assets"].)

Father's request has been heard.

To modify support obligations, a movant must prove circumstances have changed *since the last order*. (*In re Marriage of Stephenson* (1995) 39 Cal.App.4th 71, 77.) Father's allegations

20

that mother converted KMF's assets have not been a "changed circumstance" since—*at latest*—the first time father made the argument. The argument has been considered and rejected. Mother's alleged conversion of KMF is not an issue the trial court must continue to reconsider in the context of his support obligations. The time for father to produce evidence of the alleged conversion and for the trial court to consider that evidence has long passed. Even if father's request were properly before us, we would therefore decline to enter the requested order.

## DISPOSITION

We affirm the trial court's orders. Mother is entitled to costs on appeal.

CERTIFIED FOR PUBLICATION.

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

JOHNSON, J.

21