Filed 1/31/23  Marriage of Furie CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re Marriage of KELLY and RUSSELL FURIE. | B315405<br><br>(Los Angeles County<br>Super. Ct. No. PD048281) |
| KELLY FURIE,<br><br>        Respondent,<br><br>        v.<br><br>RUSSELL FURIE,<br><br>        Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Christine Byrd, Judge.  Affirmed.

Russell Furie, in pro. per.; Holmes, Taylor, Athey, Cowan, Mermelstein & Jones and Andrew B. Holmes for Appellant.

Law Offices of Rosenthal & Associates and Lisa F. Rosenthal for Respondent.

On June 14, 2021, Russell Furie filed in the trial court a request for an order, as he characterized it, "to align the [trial court's] [December 30, 2015, December 17, 2014, and April 14, 2016 orders] in this case with [a] December 5, 2019 Statement of Decision" the trial court had entered after briefing and an evidentiary hearing. The trial court denied Russell's[1] motion "based on untimeliness and on the merits."

Russell contends on appeal that his motion was timely and meritorious. Based on Family Code sections 2122 and 3691,[2] however, we agree with the trial court that the motion was untimely.[3] We affirm the trial court's order.

## BACKGROUND

Kelly and Russell Furie married on November 2, 1996. The couple had two children; one born in 1998 and the other in 2001. Kelly petitioned to dissolve the marriage on August 25, 2009. In

---

[1] The parties in this matter share a last name. We therefore refer to the parties by their first names for ease of reading and to avoid confusion.

[2] Further statutory references are to the Family Code unless otherwise specified.

[3] The trial court appears to have been focused on section 2122. Additionally, the parties' arguments here are centered around section 2122. The result is the same, however, without regard to whether the correct statute of limitations is section 2122 or section 3691.

February 2010, the trial court entered a stipulated judgment for legal separation incorporating a settlement agreement.[4]

### A. December 5, 2019 Findings and Order After Hearing

Russell's arguments on the merits stem from the facts underlying the following narrative, drawn from the trial court's findings and order filed on December 5, 2019[5]:

"[Russell and Kelly's] minor children were entitled to, and received, Social Security derivative benefits based on [Russell's] disability.

"[A]t some point, Social Security notified [Kelly] that it had overpaid benefits in past years and that [Kelly] was required to pay back the Social Security Administration. [Kelly] was not required to pay the entire amount immediately. Instead, Social Security began offsetting amounts against the children's monthly Social Security derivative benefits. In other words, [Kelly] was allowed to pay back the amount she owed over time.

"[I]n 2015, [Russell] questioned how [the Los Angeles County Child Support Services Department (CSSD)] was applying credits for the Social Security derivative benefits and how CSSD was applying [Russell's] payments to current support versus arrears. On December 30, 2015, the [trial court] ordered CSSD to prepare a report applying the credits and calculating arrears.

---

[4] Two earlier appeals provide other background information not relevant to this appeal. (*In re Marriage of Furie* (Mar. 28, 2014, B241754) [nonpub. opn.] (*Furie I*); *In re Marriage of Furie* (2017) 16 Cal.App.5th 816 (*Furie II*).)

[5] The trial court characterized these facts as "not in dispute."

3

"[A]t a court hearing on April 16, 2016, CSSD provided its report, concluding that arrears totaled $36,509.48. The parties stipulated to the amount of arrears determined by CSSD and signed a stipulated settlement agreement that reads, 'The parties agreed with the audit conducted by CSSD re: arrears and the total arrears is $36,509.48, comprised of $32,158.17 principle [*sic*] and $4351.31 interest as of April 12, 2016.' The settlement agreement was signed by the judge and filed.

"[T]hereafter, CSSD continued to enforce and [Russell] continued to pay. At first, the amount of child support was $2,092/month because both children were minors. Once the older child 'aged out,' the amount of child support for the remaining minor child automatically reduced to $1307. CSSD applied the Social Security derivative benefits as credits, thereby reducing the child support owed by [Russell] each month.

"[O]n July 7, 2019, CSSD issued a notice of case closure on the grounds that both children had now 'aged out' and, according to the CSSD records, the arrears had been paid in full. The case closure notice and report showing past payments and showing that no further payments were due" was attached to the trial court's findings and order after hearing.

The trial court's December 2019 finding and order was a result of Kelly's petition to the trial court for a recalculation of Russell's support payments and amounts of the children's Social Security derivative payments and her own repayments of the amount erroneously overpaid to her, which she had repaid in the form of offsets to later derivative benefit payments. After CCSD gave notice that its audit concluded that there were no child support arrears, Kelly filed a request for an order "claiming [Russell owed] $14,475.48 in arrears."

4

Kelly argued to the trial court that CSSD " 'used the wrong number' for the amount of child support owed each month and that was the reason that their conclusion that [Russell's] arrears had been fully paid was in error. That argument [was] based on the report that accompanied CSSD's notice of case closure."

The trial court ultimately concluded, based on the parties' undisputed facts, that CSSD's conclusion that there were no child support arrears was correct. The trial court concluded that Kelly's calculations were based on the net amount of Social Security derivative benefit payments she was receiving, while CSSD's calculations (resulting in no arrears) were based on the *total* amount of Social Security derivative benefit payments Kelly was receiving—not adjusted for the offset benefit amount that accounted for her repayment of the erroneous overpayment.

"Offsetting was a convenient way for [Kelly] to pay off her debt over time," the trial court concluded. "It did not change the amount of child support that [Russell] owed, nor did it change the Social Security benefits to which the children were entitled. What it did was change the net amount distributed to [Kelly] each month. The effect of using the net amount <u>after payment</u> of [Kelly's] debt to Social Security instead of the full amount of the children's benefits <u>before payment</u> of [Kelly's] debt to Social Security would be to require [Russell] to 'back fill' the amounts taken out by the Social Security Administration to satisfy [Kelly's] obligation. In effect, [Kelly's] position would transform her own obligation to repay the Social Security Administration into a child support arrears obligation for [Russell] to pay. There is no legal basis for doing so."

On that basis, the trial court denied Kelly's request for an order to determine child support arrears.

After the trial court entered its December 2019 order, Russell sought to use the trial court's conclusion that there were no arrears *in December 2019* to modify the trial court's *earlier* orders in which the parties had agreed that there existed and the trial court had found child support arrears.

**B. Russell's June 14, 2021 Motion**

On June 14, 2021, Russell filed a motion in the trial court seeking several orders. Pertinent to this appeal, Russell asked the trial court to "set aside, vacate, or modify the [trial court's] December 30, 2015 order (and any other prior arrears orders) to show no arrears pursuant to [Code of Civil Procedure section] 473[, subdivision ](d), extrinsic fraud, or any other equitable relief; [and to] offset all remaining legal fees/costs owed by [Russell] against [Social Security Administration] derivative [benefit] overpayments . . . ." The motion purported to be based on the trial court's "December 5, 2019 [findings and order after hearing] showing CSSD had properly applied [Social Security Administration] [d]erivative [benefit] overpayments," Kelly's "admission during the November 25, 2019 [hearing] that confirmed she'd received the [Social Security Administration] [d]erivative[ benefit] overpayments," and "CSSD's partial audit in April 2016 which did **not** include credits for overpaid [Social Security Administration] derivative [benefits] received by [Kelly]," among other things.

The trial court heard the motion on July 12, 2021. At that hearing, counsel for Russell argued that the parties' 2016 stipulated order regarding arrears did not account for the erroneous Social Security derivative overpayment (or, implicitly Kelly's repayment by offset) because Russell was unaware of the overpayment at the time.

6

Russell's counsel identifies the trial court's December 2019 order as the means by which Russell learned of the issues regarding—as he characterizes it—the misapplication of the Social Security derivative benefit overpayment. "Frankly," Russell's counsel told the trial court, "because of the order that [the trial court] issued in December of, I believe, it was 2019, where we had gone through a lot of some of these analyses in response to [Kelly's] request for further payments because she believes she's been underpaid at the time. And your honor did a fairly thorough analysis of what [CSSD] has done at the time. [¶] We believe that this motion wouldn't be necessary because we felt that clearly showed that there had been overpayments that had not never [*sic*] been properly applied."

The trial court confirmed Russell's timeline:

"The court: So what you're saying is that the 2019 order flagged this overpayment issue and –

"[Russell's attorney]: Yes, your honor.

"The court: -- and now you want to go back to 2015 and recalculate that number.

"[Russell's attorney]: Well, it's not exactly – I suppose you can look at it that way. It's just what we discovered was there was a bucket of money, forty something thousand dollars, that hadn't been accounted for that was sitting in the possession of [Kelly] at the time. And so nobody knew that. We learned about it later. [¶] The 2019 series of orders kind of put it into [stark] relief. And then in December of 2019, your honor issued an order that it really showed what had happened. And so we asked or Mr. Furie asked that [Kelly] to file satisfactions in light of these things."

7

At the July 2021 hearing, the trial court made alternative findings. "First," the trial court said, "the court finds that the [motion] is untimely under [section] 2122. If there is a claim of mistake, there is a time limit of one year. And certainly the issues were fully ripe and known to [Russell] in 2019. So we're talking much more than one year from his declaration. [¶] Paragraph 22 of [Russell's] declaration appears that he was well aware of the issue from his own perspective of, even though I don't agree with the way he's approaching it, but he was aware of it, of the overpayments in 2018.

"And so it's untimely, . . . whether it's a claim of mistake or for fraud or perjury, all of the grounds under [section 2122] of the Family Code, both of these requests are untimely."

The trial court also denied the motion on the merits based on Russell's request that the derivative benefit overpayment be credited to him without accounting for Kelly's repayment by offset.

In a minute order dated July 12, 2021, the trial court ruled that Russell's request to set aside arrears orders based on the December 2019 trial court findings and order and the request to offset remaining legal fees and costs against the derivative benefit overpayments were both "denied based on untimeliness and on the merits."

The trial court entered an order on November 23, 2021, memorializing its findings and orders entered at the July 12, 2021 hearing. Pertinent to this appeal, the trial court ordered that the June 14, 2021 requests for orders related to the Social Security derivative benefit overpayments were "denied as untimely under [section] 2122," among other orders not relevant to this appeal.

8

Russell filed a timely notice of appeal. (§ 3554; Code Civ. Proc., § 904.1, subd. (a)(10).)

## DISCUSSION

As we noted in the opinion on Russell's last appeal, Russell's "in propria persona status relaxes the restrictions neither on our discretion nor on the permissible scope of our review. Neither may we hold litigants in propria persona to different standards than we hold attorneys." (*Furie II*, *supra*, 16 Cal.App.5th at p. 824, citing *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 985 ["requiring or permitting exceptional treatment of parties who represent themselves would lead to a quagmire in the trial courts, and would be unfair to the other parties to litigation"]; see *Furie I*, *supra*, B241754 at p. 6.)

Russell's argument on appeal is that Kelly received an overpayment of Social Security derivative benefits in favor of the couple's children that should have been deducted from the child support he had been ordered to pay (without regard to repayment). Russell contends that the trial court should have vacated or modified orders dated December 17, 2014, December 30, 2015, and April 14, 2016 (and presumably any others before the December 5, 2019 order that concluded there were no longer any arrears) because if the overpayment had been applied as he argues it should have been, he would not have been in arrears.

Russell grounds his argument in section 4504. Because the trial court concluded his motion was untimely, however, Russell's argument here is primarily that section 4504 is self-contained and has no statute of limitations: "[Section] 4504 mandates certain credits," father argues, "and no time limit applies to the application of this portion of the statute."

9

Section 4504 provides in pertinent part: "If the court has ordered a noncustodial parent to pay for the support of a child, payments for the support of the child made by the federal government pursuant to the Social Security Act . . . because of the retirement or disability of the noncustodial parent and received by the custodial parent or other child support obligee shall be credited toward the amount ordered by the court to be paid by the noncustodial parent for support of the child unless the payments made by the federal government were taken into consideration by the court in determining the amount of support to be paid. Any payments shall be credited in the order set forth in Section 695.221 of the Code of Civil Procedure." (§ 4504, subd. (b).)

Russell explains in his opening brief: "In a Ruling on December 5, 2019, the [trial court] made findings pertaining to child support credits done by CSSD" regarding the overpayment of Social Security derivative benefits to Kelly and their effect on the child support arrears. "*Based on the findings in the December 5, 2019 Ruling*," Russell continued, "*on June 14, 2021*, [Russell] filed a [request for order] to" set aside any previous orders finding him in arrears.

The trial court concluded alternatively that Russell's motion was untimely based on section 2122 and that it was not meritorious because it sought to credit Russell with the overpayment, but sought to deny Kelly any accounting for repayment.

## A. Section 2122

In section 2120, the Legislature "f[ound] and declare[d]" that "[i]t occasionally happens that the division of property or the award of support, whether made as a result of agreement or trial,

10

is inequitable when made due to the nondisclosure or other misconduct of one of the parties." (§ 2120, subd. (b).) The Legislature *further* declared that "[t]he public policy of assuring finality of judgments must be balanced against the public interest in ensuring proper division of marital property, in ensuring sufficient support awards, and in deterring misconduct." (§ 2120, subd. (c).) To that end, the Legislature provided that "[i]n proceedings for dissolution of marriage, for nullity of marriage, or for legal separation of the parties, the court *may*, on any terms that may be just, *relieve a spouse from a judgment, or any part or parts thereof*, adjudicating support or division of property, after the six-month time limit of Section 473 of the Code of Civil Procedure has run, *based on the grounds, and within the time limits, provided in this chapter*." (§ 2121, subd. (a), italics added.)

The Legislature set out those time limits in section 2122, which states in full:

"The grounds and time limits for a motion to set aside a judgment, or any part or parts thereof, are governed by this section and shall be one of the following:

"(a) Actual fraud where the defrauded party was kept in ignorance or in some other manner was fraudulently prevented from fully participating in the proceeding. *An action or motion based on fraud shall be brought within one year after the date on which the complaining party either did discover, or should have discovered, the fraud*.

"(b) Perjury. An action or motion based on perjury in the preliminary or final declaration of disclosure, the waiver of the final declaration of disclosure, or in the current income and expense statement *shall be brought within one year after the date*

11

*on which the complaining party either did discover, or should have discovered, the perjury.*

"(c) Duress.  An action or motion based upon duress *shall be brought within two years after the date of entry of judgment*.

"(d) Mental incapacity.  An action or motion based on mental incapacity *shall be brought within two years after the date of entry of judgment*.

"(e) As to stipulated or uncontested judgments or that part of a judgment stipulated to by the parties, mistake, either mutual or unilateral, whether mistake of law or mistake of fact.  An action or motion based on mistake *shall be brought within one year after the date of entry of judgment*.

"(f) Failure to comply with the disclosure requirements of Chapter 9 (commencing with Section 2100).  An action or motion based on failure to comply with the disclosure requirements *shall be brought within one year after the date on which the complaining party either discovered, or should have discovered, the failure to comply*."  (Italics added.)

Section 2122 is, by its terms and its title ("Grounds for relief; limitation of actions"), a statute of limitations.  " 'Statue of limitations' is the collective term applied to acts or parts of acts that prescribe the periods beyond which a plaintiff may not bring a cause of action.  [Citations.]  There are several policies underlying such statutes.  One purpose is to give defendants reasonable repose, thereby protecting parties from 'defending stale claims, where factual obscurity through the loss of time, memory or supporting documentation may present unfair handicaps.'  [Citations.]  A statute of limitations also stimulates plaintiffs to pursue their claims diligently.  [Citations.]"  (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806 (*Fox*).)

Because Russell's motion was filed outside *any* of the time limits listed in section 2122, the trial court did not determine whether any of the grounds for relief in section 2122 existed. (See § 2121, subd. (b) ["In all proceedings under this chapter, before granting relief, the court shall find that the facts alleged as the grounds for relief materially affected the original outcome and that the moving party would materially benefit from the granting of the relief"].)  We will not make any finding here, either.  But Russell's brief demonstrates that he made his June 14, 2021 motion well outside any of the time limits in section 2122.

At the hearing on Russell's motion, Russell's attorney argued that Kelly had engaged in a "deliberate cover up, fraud, hiding of the existence of these overpayments" and "that separate fraud would allow us to get around any time limits . . . ."  But he acknowledged at that hearing that Russell knew about the alleged fraud (again, we do not determine here that there was any fraud) by December 2019, at the very latest.  If we were to accept Russell's statement at face value (and ignore pieces of the record that demonstrate that Russell should have known about the overpayment much earlier), then his motion should have been filed within one year of the hearing that resulted in the December 2019 order.

None of section 2122's other limitations provisions would be any more favorable for Russell.  Subdivisions (a), (b), and (f) each contain a version of the " 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (*Fox*, *supra*, 35 Cal.4th at p. 807.)  In this context, section 2122, subdivisions (a), (b), and (f) postpone accrual of the "complaining party's" deadline to file an

action or motion until "one year after the date on which the complaining party either" discovered or should have discovered the grounds for the action or motion. Each of those limitations periods would have expired, at the very latest, in December 2020.

The remaining provisions—subdivisions (c), (d), and (e)—are limitations based on the date of the entry of the judgment sought to be set aside or otherwise disposed of. Subdivisions (c) and (d) provide for circumstances that allow an action or motion to be brought within two years of the date of the entry of judgment. Subdivision (e) provides that an action or motion under its terms shall be brought within one year after the date of entry of judgment. None of those provisions allows for tolling based on the discovery rule. The dates of the orders Russell's motion sought to have vacated were December 17, 2014, December 30, 2015, and April 14, 2016. All of those orders were well outside the time limits imposed by section 2122, subdivisions (c), (d), and (e).

If section 2122 is the correct statute of limitations, then Russell's motion was untimely.

## B. Section 3691

We agree with the trial court's analysis under section 2122. But based on Russell's request in the trial court and the orders he sought to have vacated, we view the correct statute of limitations as section 3691.

Application of section 2122 or section 3691 appears to turn on whether the motion or action seeks to set aside a *judgment* as distinct from an *order*. Section 2122 "applies to *property division* and *support judgments* entered on or after January 1, 1993 in a *dissolution, nullity* or *legal separation* proceeding. As to such judgments, all prior law on 'equitable' set-aside relief is

14

*preempted.*" (Hogoboom et al., Cal. Practice Guide: Family Law (The Rutter Group 2022) ¶ 16:101, original italics.) "The Family Code also preempts traditional equitable set-aside law with regard to support *orders* (as distinguished from support 'judgments' entered in a marital status case). But those set-asides are governed by other statutes [citation]." (*Id.* at ¶ 16:101.2, original italics.) Section 3691 is the statute of limitations that "govern[s] relief from a *support order* after the time for [Code of Civil Procedure section 473, subdivision (b)] relief expires." (Hogoboom et al., at ¶ 16:164, original italics.) "Section 3691 specifically applies to 'An action or motion to set aside a support *order*' . . . , while section 2122 applies to 'a motion to set aside a *judgment.*'" (*In re Marriage of Zimmerman* (2010) 183 Cal.App.4th 900, 910, original italics omitted, italics added.)

Section 3690 provides that "[t]he court may, on any terms that may be just, relieve a party from a support order, or any part or parts thereof, after the six-month time limit of Section 473 of the Code of Civil Procedure has run, based on the grounds, and within the time limits, provided in this article." (§ 3690, subd. (a).) As in section 2121, section 3690 requires the trial court, "before granting relief" to "find that the facts alleged as the grounds for relief materially affected the original order and that the moving party would materially benefit from the granting of the relief." (§ 3690, subd. (b).)

Section 3691's limitations periods are shorter than those provided in section 2122:

"The grounds and time limits for an action or motion to set aside a support order, or part thereof, are governed by this section and shall be one of the following:

"(a) Actual fraud.  Where the defrauded party was kept in ignorance or in some other manner, other than through the party's own lack of care or attention, was fraudulently prevented from fully participating in the proceeding.  An action or motion based on fraud *shall be brought within six months after the date on which the complaining party discovered or reasonably should have discovered the fraud.*

"(b) Perjury.  An action or motion based on perjury *shall be brought within six months after the date on which the complaining party discovered or reasonably should have discovered the perjury.*

"(c) Lack of notice.

"(1) When service of a summons has not resulted in notice to a party in time to defend the action for support and a default or default judgment has been entered against the party in the action, the party may serve and file a notice of motion to set aside the default and for leave to defend the action.  The notice of motion *shall be served and filed within a reasonable time, but in no event later than six months after the party obtains or reasonably should have obtained notice (A) of the support order, or (B) that the party's income and assets are subject to attachment pursuant to the order.*

"(2) A notice of motion to set aside a support order pursuant to this subdivision shall be accompanied by an affidavit showing, under oath, that the party's lack of notice in time to defend the action was not caused by avoidance of service or inexcusable neglect.  The party shall serve and file with the notice a copy of the answer, motion, or other pleading proposed to be filed in the action.

16

"(3) The court may not set aside or otherwise relieve a party from a support order pursuant to this subdivision if service of the summons was accomplished in accordance with existing requirements of law regarding service of process." (Italics added.)

Under any of these provisions, then, Russell's motion would also have been untimely.

Again, we make no finding regarding whether any of the listed grounds for the filing of a motion ever occurred. But based on the substance of the motion, the relief sought, and the statutory framework, Russell's allegations implicate section 3691's deadlines within which he was required to file any motion to set aside the trial court's orders setting his support obligations.

## C. The "mandatory" nature of section 4504 does not render it exempt from statutes of limitations

Russell urges us to ignore the Family Code's limitations provisions based on the fact that none of the limitations provisions is specifically included or referenced in section 4504. "In [section] 4504," Russell argues, "the phrase 'shall be credited' is used <u>three</u> times. In [*Y.H. v. M.H.* (2018) 25 Cal.App.5th 300 (*Y.H.*)], when referencing [section] 4504, the phrase 'shall be credited' is referenced <u>eight</u> times to emphasize that credits are <u>mandated</u>. In turn, <u>mandate</u> is referenced <u>four</u> times relating back to [section] 4504. [¶] There is no ambiguity in the phrase 'shall be credited' and the word 'mandate.' *There are no limitations or ambiguity in the language of* [*section*] *4504 that would time-bar credits*." (Italics added, underlining original.)

It is of no consequence that the derivative benefit payment to Kelly may have been outside the time referenced in either section 2122 or section 3961. What matters for purposes of those statutes of limitations—at least for purposes of the arguments

17

that Russell advances—is *when Russell discovered* the overpayments.

The fact that the limitation is not written into section 4504 is irrelevant.  Statutes of limitations are *generally* entirely separate and apart from the substantive or other procedural statutes that they govern.  That does not make them any less applicable.  Yet were we to adopt Russell's position here, a complaining party could presumably bring a motion or action to reconsider support obligations decades into the future without regard to the date of an order or to discovery rule considerations; family law litigation involving Social Security derivative benefit payments would foreseeably last until the death of one party or another.

Neither does it matter how frequently a substantive statute uses the term "mandate" or some variant thereof.  Many things are legally mandatory but ultimately unenforceable because of a statute of limitations.

Russell cites *Y.H.* and *In re Marriage of Hall & Frencher* to argue that "the retroactive credits done in [*Y.H.*], *In re Marriage of Hall & Frencher*, or any other similar case could <u>not</u> be done if [sections] 2120 and 2122 were applicable.  This would run contrary to State law <u>mandating</u> credits [p]ursuant to [section] 4504."  Russell would presumably make the same argument regarding section 3691.

Neither *Y.H.* nor *In re Marriage of Hall & Frencher* presented a statute of limitations issue.  In *Y.H.*, it appears that a father sought modification of a support order based on his discovery of the mother's receipt of derivative benefits:  "Starting in March 2016, DCSS withheld $123 per month from Father's SSDI for the balance and credited Father for his overpayments

18

during the previous nine months." (*Y.H.*, *supra*, 25 Cal.App.5th at p. 303.) Father then filed a request for an order seeking relief for the misapplication of the derivative benefit payments. (*Ibid.*) "*The* [*trial*] *court heard argument on Father's request for order and motion to compel in December 2016.*" (*Ibid.*, italics added.)

*Y.H.* has no discussion of the statute of limitations. It appears likely from the face of the opinion that the father's motion was timely based on his *March 2016* discovery of overpayments and the trial court's *December 2016* hearing and order.

*In re Marriage of Hall & Frencher* (2016) 247 Cal.App.4th 23, 25 is no more helpful for Russell. In *Hall & Frencher*, "Social Security paid $960 per month to Hall in derivative benefits for [the couple's daughter] beginning in June 2014. Social Security also sent a lump sum payment of $20,824 in derivative benefits, for the period from July 2012 to April 2014." The hearing resulting in the order from which the father appealed—regarding proper application of payments that began in *June 2014*—was held on *January 13, 2015*. (*Ibid.*)

As with *Y.H.*, the statute of limitations was not at issue in *Hall & Frencher*. And as in *Y.H.*, it appears from the face of the opinion that the issue was raised in the trial court well within the time limits in either section 2122 or 3691.

Finally, Russell tells us that he "did not seek a determination of the <u>balance</u> of the unapplied [Social Security] [b]enefits in the 2019 litigation due to the complexity of issues before the [trial court] at that time." As we understand the trial court's December 2019 order, however, *the issue before the court at that time was the proper determination of how to apply the erroneous overpayment and Kelly's repayment to Russell's support*

*obligation.* *December 2019* was *the* time that the issue was litigated. It appears from Russell's argument here that he made a strategic decision to *not* raise his interpretation of section 4504 so that the trial court could consider that argument at the December 2019 hearing—*when that issue was before the court.*

Although we conclude that the correct statute of limitations was section 3691 and not, as the trial court appears to have concluded, section 2122, we agree with the trial court that the motion to set aside the trial court's December 30, 2015, December 17, 2014, and April 14, 2016 orders and to offset any of Russell's remaining support or other obligations against the derivative benefit overpayment was untimely by any measure. Because we conclude the motion was untimely, we do not reach the merits of the motion. We affirm the trial court's order denying the motion.

## DISPOSITION

The trial court's order is affirmed. Respondent is entitled to costs on appeal.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

BENDIX, J.

20