Filed 7/27/23  In re Ayden T. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re AYDEN T. et al., Persons Coming Under the Juvenile Court Law. | B317692<br>(Los Angeles County Super. Ct. Nos. 21CCJP03437A-B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>ANGEL T.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mary E. Kelly, Judge. Affirmed.

Maureen L. Keaney, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Aileen Wong, Senior Deputy County Counsel for Plaintiff and Respondent.

\* \* \* \* \* \*

This case involves a father's challenge to the juvenile court's exertion of dependency jurisdiction over his two young sons on the ground that the father failed to ensure that the older son received necessary medical care and services for his diagnosed Attention-Deficit/Hyperactivity Disorder (ADHD). Because substantial evidence supports jurisdiction, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. The Family

Angel T. (father) and Sarrah M. (mother) share two children together—Ayden T. (born October 2013) and Aydrian T. (born May 2016). Ayden was diagnosed with ADHD when he was five years old and was prescribed medication.

### II. The Custody Order

In May 2018, the family court issued an order (1) granting mother and father joint physical custody of the boys, and (2) granting mother sole legal custody, including the sole right to make medical decisions for the boys. Mother took Ayden off his ADHD medication.

2

### III.   Mother Abandons the Children and Relinquishes Custody to Father

In the spring of 2020, mother's ongoing battle with mental health issues (including experiencing hallucinations and exhibiting delusional and paranoid behavior) as well as drugs (including methamphetamine, PCP, and marijuana) began to overwhelm her.  In June 2020, mother became homeless, and father—with the aid of paternal relatives—started taking sole physical custody of the boys.  In April 2021, mother returned to father's home with a notary and formally signed over custody of the children to father, so she could "'get herself in order.'"  Mother then walked out the door, never to be seen again.

The absence of ADHD medication and mother's abandonment started taking its toll on Ayden.  Ayden started suffering from depression, and engaging in behaviors such as banging his head when he feels frustrated, experiencing nightmares, constantly changing topics, jumping from one thought to another, and "lying, stealing, and changing stories."  Due to these behaviors, Ayden was not performing at his grade level in school, and no individualized education plan had been developed for him.  Ayden's behavioral problems also affected Aydrian, who started to throw objects and fight when he was around Ayden.

Prior to December 2021, father took no action to address Ayden's or Aydrian's behavioral problems.  Father did not seek counseling or other services for either boy.  Father did not approach Ayden's school about developing an individualized education plan.  Father did not try to get Ayden the medication he needed for his ADHD, later explaining that he felt his "hands" were "tied" by the prior family court custody order.  Yet father

also did not petition the family court to modify that prior custody order to empower him to make medical decisions for his children, proffering that he meant to do so but "due to Covid . . . just postponed [his] going" to court.  Father also did not take the boys to get an annual check-up, to get their immunizations, or to visit the dentist.

## IV.  Exertion of Dependency Jurisdiction

In July 2021, the Los Angeles Department of Children and Family Services (the Department) filed a petition asking the juvenile court to exert dependency jurisdiction over Ayden and Aydrian.  Although the boys first came to the Department's attention based on a referral alleging that father had "beat . . . up" and "punched" Ayden, the Department was unable to substantiate those allegations due to the absence of any corroborative evidence and Ayden's ADHD-related "lying problems."  The Department's investigation into the referral nevertheless uncovered Ayden's unaddressed medical needs.  Thus, the Department's petition implored the court to assert jurisdiction because (1) mother's substance abuse history rendered her "incapable of providing regular care" for the boys, (2) mother's mental and emotional problems rendered her "incapable of providing" "regular care" for the boys, and (3) mother and father "medically neglected" Ayden by "fail[ing] to ensure that [he] enrolled in services to address" his ADHD diagnosis.  The Department further alleged that these allegations demonstrated a "failure or inability" of the parents to "supervise or protect" the children that placed both children at substantial risk of serious physical harm, thereby rendering jurisdiction

4

appropriate under Welfare and Institutions Code section 300, subdivisions (b)(1) and (j).[1]

The juvenile court held a combined jurisdictional and dispositional hearing on December 20, 2021. By that time, father was "in the process of trying to obtain" an individualized education plan for Ayden. He was also "in the process" of getting Ayden's medical insurance transferred to him, and had completed an "intake" for services for Ayden.

Despite belated efforts to address some of Ayden's outstanding issues, the juvenile court nevertheless sustained the above-alleged allegations involving mother and father. Specifically, the court found a "sufficient basis" to sustain the allegation of medical neglect against father "given the length of time" and "delay" it took for father to obtain services for Ayden. The court went on to remove Ayden and Aydrian from mother and place them with father, and order family maintenance services for father.

## V.    Appeal

Father filed this timely appeal.[2]

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

The Department also asked the court to exert jurisdiction due to father's failure to protect the children from mother's substance abuse and mental and emotional problems, but the juvenile court struck those allegations as against father.

[2]    While this appeal has been pending, the Department filed a subsequent petition alleging additional grounds for the exertion of dependency jurisdiction (§ 342) and detained the children from father.

5

## DISCUSSION

Father asserts that we must reverse the juvenile court's jurisdictional finding that father was medically neglectful for not obtaining services to address Ayden's ADHD.

As a threshold matter, the Department argues that father's jurisdictional challenge is not justiciable because the finding father challenges was also sustained *as to mother* (as well as other findings applicable only to mother), such that this finding—as well as dependency jurisdiction over Ayden and Aydrian—will remain intact no matter how we resolve father's challenge to the finding *as to him*. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491 [dependency jurisdiction attaches to the child, not a parent], overruled on another ground in *In re D.P.* (2023) 14 Cal.5th 266, 283; *In re D.P.* (2014) 225 Cal.App.4th 898, 902 ["'[A]s long as there is one unassailable jurisdictional finding, it is immaterial that another might be appropriate'"].) The Department is correct that this appeal will not alter the children's status as dependents or the propriety of the specific finding father challenges *as to mother*, but we have discretion to entertain father's challenge anyway and elect to exercise that discretion here because the jurisdictional finding *as to father* may prejudicially affect him in future dependency proceedings. (*In re D.P.* (2023) 14 Cal.5th 266, 285 ["Courts may consider whether the challenged jurisdictional finding 'could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings,' or "'could have other consequences for [the appellant], beyond jurisdiction"'"]; *ibid.* ["A prior jurisdictional finding can be considered by the Department in determining whether to file a dependency petition or by a juvenile court in subsequent dependency proceedings"].)

6

Although the finding father challenges rests on two statutory foundations—subdivision (b)(1) (as to Ayden) and subdivision (j) (as to Aydrian) of section 300[3]—father challenges the subdivision (j) basis solely on the ground that the predicate subdivision (b)(1) finding is invalid.  Thus, we focus solely on subdivision (b)(1).  Under that subdivision and as pertinent here, a juvenile court may exert dependency jurisdiction over a child if the "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of" the parent's "failure or inability . . . to adequately supervise or protect the child."  (§ 300, subd. (b)(1)(A).)  We review the juvenile court's findings of jurisdiction for substantial evidence—that is, we review the record in the light most favorable to the court's findings, drawing all reasonable inferences from the evidence to support those findings.  (*I.J.*, *supra*, 56 Cal.4th at p. 773.)

Substantial evidence supports the juvenile court's finding that Ayden is at substantial risk of serious physical harm due to father's negligent failure to protect him from the behaviors rooted in his ADHD diagnosis.  Between June 2020 (when mother became homeless and left Ayden with father) and the December 2021 jurisdictional hearing, father had custody of Ayden.  Father knew of Ayden's ADHD diagnosis and the problems—emotional, educational, and physical—it caused.  Yet except in the weeks leading up to the jurisdictional hearing, father allowed Ayden's

---

[3]     Subdivision (j) of section 300 is necessarily derivative of other jurisdictional findings, as it authorizes the exercise of dependency jurisdiction if (1) "[t]he child's sibling has been abused or neglected, as defined in subdivision . . . (b)" of section 300, and (2) "there is a substantial risk that the child will be abused or neglected" under that subdivision.  (§ 300, subd. (j); *In re I.J.* (2013) 56 Cal.4th 766, 774 (*I.J.*).)

7

condition to go untreated. Father did not provide Ayden with his prescribed medication, did not take him to the doctor, did not enroll him in services like therapy, and did not seek an individualized education plan. Despite knowing mother was living on the streets, at no time did father request a change order from the family court for legal custody or, at a minimum, authorization to provide Ayden with medical care for his diagnosed ADHD. (Fam. Code, § 3003 ["Joint legal custody" means both parents share the right and responsibility to make decisions relating to health, education, and welfare of a child]; *In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 956 [parent seeking modification of final custody determination must show changed circumstances]; *In re Marriage of Furie* (2017) 16 Cal.App.5th 816, 826-827 [best interest standard, not change in circumstances, governs modification of parenting authority, such as orthodontic care, that does not rise to change in legal custody].) Meanwhile, the symptoms of Ayden's untreated ADHD posed a substantial risk of serious harm to Ayden's physical, emotional, and educational well-being—he banged his head in frustration, suffered with nightmares, made up stories, struggled to focus, and fell behind in school. Further, because father's failure to seek an order from the family court to allow him to obtain medication for Ayden is just one example of father's failure to provide—rather than the "sole[]" reason—the jurisdictional finding in this case does not run afoul of the newly minted limitation in subdivision (b)(2)(B) of section 300 that prohibits a court from exercising dependency jurisdiction "solely" due to a parent's failure "to seek court orders for custody of the child." (§

8

300, subd. (b)(2)(B); *In re L.B.* (2023) 88 Cal.App.5th 402, 413-415.)[4]

Father resists this conclusion with four arguments.  First, he argues that he was not "passive" or neglectful of Ayden's needs because he called the Department in 2019 and 2020 to report mother's neglect.  This is irrelevant because the court's jurisdictional finding here independently rests on father's subsequent conduct in ignoring Ayden's ADHD condition—to Ayden's detriment—while father had sole custody of Ayden in 2020 and 2021.  Second, father argues that he was a "'big advocate'" for medicating Ayden and that the family dynamics were "complex and insufficient to place cause on" father.  Regardless of whether father was a "'big advocate'" for treating Ayden's ADHD condition with medication, father did not *do anything* to obtain that treatment—he did not seek services for Ayden, ask for a court order authorizing him to obtain medication, or ask for an independent educational plan.  Third, father argues that he started addressing Ayden's ADHD just before the December 2021 jurisdictional hearing because he applied for an independent educational plan, was "in the process" of transferring insurance, and had completed intake for some services for Ayden.  While commendable, and although we look at risk at the time of the jurisdictional hearing (see *In re M.M.* (2015) 240 Cal.App.4th 703, 719), father's last-minute efforts have not ameliorated the risk to Ayden because Ayden is still without his medication or services to address his ADHD.  Fourth and finally, father argues that it is wrong to characterize his

_____

4      This new provision does not appear to apply *at all* in this case, as it took effect on January 1, 2022—yet the jurisdictional hearing in this case occurred in December 2021.

9

inaction as neglectful passivity toward Ayden and Aydrian because he was a "single parent" trying "to do his best to navigate the best way to care for" them. While we appreciate the obstacles father may have faced as a parent, where—as here—substantial evidence supports the juvenile court's findings, we must affirm those findings rather than "exercise our independent judgment." (*In re Joaquin C.* (2017) 15 Cal.App.5th 537, 560; *James B. v. Superior Court* (1995) 35 Cal.App.4th 1014, 1020-1021.)

## DISPOSITION

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.</u>

_____, J.
HOFFSTADT

We concur:

_____, P. J.
LUI

_____, J.
ASHMANN-GERST