Filed 10/10/25  Kracow v. Kracow CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| TERESA KRACOW,<br><br>    Petitioner and Appellant,<br><br>v.<br><br>MICHAEL KRACOW,<br><br>    Respondent. | B334986<br><br>(Los Angeles County<br>Super. Ct. No. 18STFL11573) |

_____

APPEALS from orders of the Superior Court of Los Angeles County, Angela J. Davis, Judge.  Affirmed.

Teresa Kracow, in propria persona, for Petitioner and Appellant.

Timothy M. Murphy for Respondent.

_____

# INTRODUCTION

In this family law matter, Teresa Kracow appeals from the family court's orders modifying the child support and spousal support amounts to be paid to her by her former spouse, Michael Kracow.[1] Teresa also challenges the family court's order denying her request for reimbursement of medical expenses for their daughter under Family Code section 4063.[2] We affirm because Teresa has not met her burden of demonstrating the family court abused its discretion by entering the challenged orders.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *The Parties and the Marital Dissolution Proceedings*

Teresa and Michael were married on December 10, 2004. Their daughter Samantha was born in December 2006. They separated in 2018, and Teresa filed for divorce on September 24, 2018. A stipulated judgment was entered on the divorce on November 2, 2021, with additional proceedings thereafter on the parties' prenuptial agreement, custodial time, and child support and spousal support issues.

As relevant here, in September 2022, Teresa requested an upward modification of child support payments and an order for reimbursement of $6,686.09 for Samantha's medical expenses and in June 2023, Michael requested modification of spousal support he paid to Teresa.

---

[1] We refer to the parties by their first names to avoid confusion; no disrespect is intended.

[2] Undesignated statutory references are to the Family Code.

B.    *Child Support Hearings and Order*

The family court (Department 46) held a hearing on Teresa's request for an upward modification of child support on July 13, 2023, with the parties, Michael's attorney, and county child support counsel present.  Teresa appeared without counsel. At that time, there was an order in place for Michael to pay $532 per month to Teresa in temporary child support.  The family court considered the parties' income and expense declarations and took testimony from each parent, as well as Teresa's accountant.

Teresa testified she averaged around $3,000 a month in income as a translator, sometimes $3,500, and spent about $50 to $80 per month on groceries because she obtained food from friends and food banks.  She asked that the county use $3,500 per month as the relevant figure for its guideline calculation.  Teresa testified she drove a 2023 Tesla Model 3 and stated that a friend loaned her $45,000 to buy the car after she had a car accident and was turned down for a loan from Tesla.  Michael's counsel stated he first learned about her ownership of the Tesla from her tax records, which showed Teresa took a tax deduction for it. Teresa also testified that another friend and a cousin had loaned her $10,000 and $35,000 in cash, respectively, but that none of these loans had any written agreement or interest rate.  She testified she also had a Small Business Association loan for her independent interpreter business and a home refinance loan, but stated her refinance was "not through a bank" and that she did not have those loan documents or know how much she put down when she refinanced in 2022.

When the court asked if she reviewed materials to verify her income and expense numbers were accurate, Teresa stated

3

she based her current income and expense declaration "on [her] old income and expense [declaration]." She estimated she paid $70 month in car insurance, or $1,000 to $1,200 annually, but said she was not sure. Teresa stated she did not believe Michael's estimated income of about $6,000 per month was accurate; she believed it did not include support from his family or additional amounts he made as a musician, notary, and from "selling sperm" to a sperm bank.

Michael argued that Teresa's bank records showed "hundreds" of electronic deposits going into her accounts that she did not report, totaling as much as $10,000 in a month, and that her tax returns also showed investment income that she did not report. Teresa did not dispute the exhibits before the family court were her bank statements. She testified that the deposits "[were] sometimes to pay other interpreters" she subcontracted with in the course of running her business, or to pay technicians to set up booths at conferences, or for other business conference and seminar preparation expenses. Teresa asserted that the totals calculated by Michael's attorney also included child support and spousal support amounts, and that she often moved money between her three accounts, resulting in double-counting of those sums in the calculations. She stated she also had received settlements for three car accidents in one year in 2022.

Teresa's accountant testified that her adjusted gross income was $19,612 in 2021 and $15,980 in 2022. He testified that her Schedule C gross business income for 2022 was $43,808. The accountant did not assist Teresa with her FL-150 income and expense declaration or do any audit of her bank accounts and deposits.

Michael provided his 2022 tax returns showing W-2 income of $72,800 from his occupation as an architectural drafter. He testified that he last sold sperm eight years ago, did not make any income as a notary, made "maybe $150" over the past six years as a musician, and previously worked some part-time shifts as a bail bondsman but stopped before 2020. Michael testified that his adult stepdaughter Suzette (Teresa's estranged biological daughter) lived with him but did not pay rent or utilities, although she reimbursed him for her cell phone bill. He also testified he saw Teresa prepare her taxes during their marriage and witnessed her purportedly hiding income from the IRS by not declaring cash payments and keeping two separate accounting ledgers.

The family court stated it had "concerns about the financial disclosures of Ms. Kracow," including that she did not comply with loan disclosure and loan application disclosure requirements for the past two years, such as not producing her loan applications for the home refinance or her Tesla. The court concluded it was more likely than not that Teresa had understated her income and expenses. The court found in Teresa's declaration that she spent $50 to $80 per month on groceries and eating out in 2022 was "essentially belied by the bank records," which showed "fairly frequent eating out" and "purchases at grocery stores." The court did not find Teresa's testimony that she received regular gifts of food persuasive. The court stated Teresa's utilities, phone, and email expenses of $50 per month "seem[] low" given her business needs. The court noted Teresa also previously testified the Tesla did not belong to her yet claimed the electric vehicle tax credit, and it found concerning that "the financial transactions that she describes as

5

loans from family and friends are inconsistently identified" and appeared closer to a gift, with no loan agreements, interest rate, payment schedule, or due date.

The family court concluded with regard to Teresa's income that "even with adding in the money that she is receiving for spousal support and child support she would need at least another 1,500 to 2,000 [dollars] a month pretax to support the expenses that she is paying. And I do think that the evidence indicates that it is more likely than not that her income is much closer to something between 4,500 and 5,000 than 3,500 [dollars]. So what I think would be appropriate to do—so I will take the midpoint there of 4,700 [dollars]." The court stated this estimate "is appropriate for a number of reasons including that on her most recent filed tax return she declares her income from interpreting services after deductions to be . . . something like 16,000 [dollars] for the whole year. There are also the infusions of support from family and from other sources, and there is also evidence of expenditures showing evidence of income."

With regard to Michael's income, the court stated, "I don't think that the evidence indicates a higher income for Mr. Kracow than what was established by his tax return" (i.e., $72,800 per year, or $6,067 per month). The court made a finding that the custodial timeshare of Samantha was 36 percent to Michael between October 1, 2022 and March 20, 2023, and 50 percent beginning April 1, 2023.

The family court directed the county to calculate guideline support based on these income amounts, and it entered a temporary child support order modifying support paid from Michael to Teresa to $69 per month. The court asked the parties and county to prepare any alternative calculations for

6

consideration and return for another hearing after the spousal support modification hearing.

On August 23, the family court (Department 7) continued the modification of spousal support hearing.

On October 26, 2023, the family court (Department 46) held the continued hearing on child support. Before the hearing, Michael filed a declaration stating he had observed an extensive remodel taking place at Teresa's residence. Teresa confirmed she began adding a second story to her house "two or three months ago," at a cost of "a little over $400,000," with the help of an unnamed "investor" who "did not want to be brought into the court." The court admonished her that "the essence of this proceeding is full, and complete, and robust financial disclosure," and the court asked Teresa why it should not consider the $400,000 as income. Teresa stated the home was no longer in her name, but in a trust held by her daughters and the purported investor.

The court stated: "Ms. Kracow's testimony is inconsistent with her income and expense declaration in which she does indicate that she owns the house and that she is responsible for the mortgage on the house. . . . The court also notes that this is not the first instance of Ms. Kracow's testimony being inconsistent in very significant ways," such as her representations regarding the Tesla vehicle. The court stated it was "extremely troubled that someone who would testify that she was living at a near poverty level" was now undertaking a previously undisclosed $400,000 home remodel and found it "extremely noteworthy" and "very problematic" that Teresa was unwilling to identify the source of funds for the remodel. The court stated it was "prepared to draw some adverse inferences,"

and that Teresa's testimony indicated "the financial contributions of others to [her] lifestyle is even higher than what became clear at the last proceeding," demonstrating "an undisclosed extremely significant financial infusion into [her] lifestyle."

After a recess, Teresa stated her "investor" was actually three people who were loaning her money with the promise of being paid back if she sold or refinanced the home. She testified she had written agreements with them but did not have the documents with her, and that the total estimated cost of construction was $450,000. She believed the deed to the house was still in her name, with a trust that willed it to her daughters. The court noted for the record that none of these loans were disclosed on Teresa's income and expense declaration.

The family court also questioned Michael about certain deposits to his bank accounts, and he testified that he sometimes had three pay periods in a month and received a consulting fee in 2021. The court concluded, "I don't really think there is a compelling indication that Mr. Kracow has an unreported source of income," whereas it did "remain concerned that Ms. Kracow does have a cash flow that far exceeds her representations regarding her income."

The court stated there "has been a failure of compliance" by Teresa with loan disclosure requirements and other disclosures as well as "internally inconsistent testimony" regarding the investor or investors in the home remodel. The court made "a finding that Ms. Kracow's financial disclosures are not reliable." It further stated that, similar to the loan for the Tesla, the home remodel was "not documented," had "no loan agreement," and "was actually concealed" from the court. The court did not believe that it received "full and robust financial disclosure" from

8

Teresa, or accurate information about her standard of living. It noted that "if the court were to annualize this capit[a]l infusion[,] the child support would in all likelihood end up being zero."

The court ultimately did not change its prior child support calculation and ordered a permanent child support order directing Michael to pay $69 per month, as of July 1, 2023. The court stated: "If anything, frankly, I think that is favorable to Ms. Kracow given the court's observation." The court's minute order stated: "The Court observes Petitioner's testimony is in opposition to her disclosures, and this is not the first instance of inconsistent testimony[,]" and "[t]he Court finds the Petitioner's disclosures are not reliable."

The court began hearing the medical reimbursements request the same day but continued it in the interest of time. The court stated, "if there are expenses just for medical insurance premium[s] I do want everyone to understand I don't think that fits within the medical reimbursement rules." The court explained that medical insurance premiums were already included as a line item on the calculation of child support.

C.    *Medical Reimbursements Hearing and Order*

On November 16, the family court (Department 46) concluded its hearing on Teresa's medical reimbursements request, with the parties and the county present. Teresa submitted a packet of receipts for her claimed medical expenses under the parties' agreement to pay equally for all of Samantha's uninsured medical and dental expenses. The court explained it would not consider expenses incurred before the judgment of divorce or those already enumerated and ordered to be paid or charged against Michael's expenses in prior court orders, and

that it would only consider additional medical expenses required to be reimbursed under section 4063.  It stated that whether Teresa had received all the amounts Michael was previously ordered to pay was a separate issue that should be addressed in an accounting or audit by the county.  The court explained again that health insurance premiums were already accounted for in the child support calculation and were not reimbursable out-of-pocket medical expenses in the absence of a court order.

The family court examined the receipts Teresa submitted and found they had already been addressed in previous orders, or were for health insurance premiums, or were for amounts predating the judgment of divorce.  Accordingly, the court denied the reimbursement request and encouraged the parties and counties to pursue an audit to resolve any outstanding payment questions.

D.    *Spousal Support Hearing and Order*

On November 27, the family court (Department 7) held a hearing on spousal support, with both parties present and represented by counsel.  At that time, there was an order in place for Michael to pay Teresa $600 per month in spousal support.  Spousal support was originally set to zero in the judgment of divorce, with $4,200 per month in income imputed to Teresa.  However, it was increased to $600 in 2022 at Teresa's request, based on an income and expense declaration Teresa filed representing she had reduced income.

At the outset of the hearing, the court also considered a motion by Michael to declare Teresa a vexatious litigant.  The court denied the vexatious litigant motion, but cautioned Teresa's counsel that "credibility is everything before this court" and that

10

the July 2023 transcript of proceedings in Department 46 "raises significant credibility concerns about your client."

In addition to reviewing the transcript from the July hearing that resulted in reduced child support, the court questioned Teresa about her home remodel. Teresa stated she was redoing the attic, with the help of "loans from family and friends." The court told her that if the work on her home was being paid for "through someone [else's] generosity," "[i]t's income, or it's money that needs to be disclosed. And it hasn't been." The court noted that Department 46 "identified significant credibility issues with the financial documentation" Teresa provided, and that "this court has similar problems with some of the financial information that has been presented before this court." The court told Teresa: "[Y]ou have come in here, I have asked you very specifically about assets that you have either—that you haven't purchased yourself or you claim other people have given to you. And it's abundantly clear that that has not been disclosed as income. And there's never really a credible reason as to why."

The court stated it was "a material change in circumstance" for someone who claimed a "very nominal" amount of income when the previous spousal support request was filed to now "be making in the area of $4,500 per month." The court granted the request to terminate spousal support, and entered a minute order setting spousal support at zero as of December 1, 2023. On November 29, the family court entered its findings and order after hearing.[3]

---

[3] Michael moved to augment the record on appeal with the findings and order after hearing entered on November 29, as well

11

With regard to the section 4320 factors to be considered when determining spousal support, the court stated in its written findings: "[Department 46] found that Petitioner had not disclosed income as required and ordered by the court with regard to a new car and multiple loans which were not disclosed as income[, and] also found that Petitioner lacked credibility on numerous areas of her testimony and imputed income of at least forty seven hundred ($4,700.00) dollars to Petitioner. [Department 7] felt that Petitioner . . . also lacked credibility in testimony in her court and warned her that it was a huge mistake to misrepresent to any court. [Department 7] also found that the imputed amount was reasonable and fair in light of the testimony and thereafter terminated the previous amount of spousal support of six hundred dollars ($600.00) . . . and returned permanent spousal support to zero."

Teresa timely appealed from the child support, spousal support, and medical reimbursements orders.[4]

---

as the family court's minute orders dated August 23 and November 16, which were not designated by Teresa. Michael's motion to augment also included the minute orders dated October 26 and November 27, which were previously included in the clerk's transcript. We grant the motion to augment as to the nonduplicative orders. (See Cal. Rules of Court, rule 8.155(a).)

[4] Teresa filed notices of appeal from the orders entered on October 26 (ordering permanent child support set to $69 per month), and November 27 (ordering spousal support set to zero). The October 26 order expressly continued the medical reimbursements hearing to November 16, on which date the family court denied Teresa's medical reimbursements request. In her designation of record on appeal, Teresa thereafter identified November 16 as a "[j]udgment or order appealed from" and

12

# DISCUSSION

Teresa challenges the family court's orders reducing monthly child support from $532 to $69, monthly spousal support from $600 to zero dollars, and the denial of $6,686.09 of medical and dental expenses incurred for Samantha. As we explain below, we conclude Teresa has not demonstrated the court abused its discretion.

## A.      *Governing Law and Standard of Review*

Subject to certain exceptions, "a support order may be modified or terminated at any time as the court determines to be necessary." (§ 3651, subd. (a); accord, *In re Marriage of Hein* (2020) 52 Cal.App.5th 519, 528.) "As a general rule, courts will not modify child or spousal support unless there has been a material change of circumstances following the previous determination." (*In re Marriage of Usher* (2016) 6 Cal.App.5th 347, 357 (*Usher*); accord, *In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1048.) The party seeking modification of a

---

designated the November 16 hearing transcript. Given Teresa's clear intent to appeal the medical reimbursements order, and her appeal from the October 26 order partially addressing and continuing that matter, we liberally construe Teresa's notice of appeal from the October 26 order to encompass the November 16 order. (See Cal. Rules of Court, rule 8.100(a)(2) ["The notice of appeal must be liberally construed."]; accord, *Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 21; cf. *Filbin v. Fitzgerald* (2012) 211 Cal.App.4th 154, 173 ["policy of liberally construing a notice of appeal in favor of its sufficiency" applies unless the notice "cannot be read as reaching a judgment or order not mentioned at all"].)

child support order bears the burden of showing changed circumstances sufficiently material to support the modification. (See *Usher,* at pp. 357-358; *Cryer,* at p. 1048.)  Likewise, the party seeking a modification of an award of spousal support bears the burden of producing evidence of the changed circumstances. (*In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1480; accord, *In re Marriage of Tydlaska* (2003) 114 Cal.App.4th 572, 575.)

"'There are no rigid guidelines for evaluating whether circumstances have sufficiently changed to warrant a child support modification.'"  (*Usher, supra,* 6 Cal.App.5th at p. 358.) "Each case stands or falls on its own facts, but the overriding issue is whether a change has affected either party's financial status."  (*In re Marriage of Laudeman* (2001) 92 Cal.App.4th 1009, 1015.)

"'In determining whether a change of circumstances has occurred [for purposes of spousal support], the trial court is required to reconsider the same standards and criteria set forth in . . . Family Code section 4320 it considered in making the initial long-term order at the time of judgment and any subsequent modification order.' [Citation.]  These criteria include, among other things, the earning capacity of each party, [and] the ability of the supporting party to pay spousal support." (*In re Marriage of Berman* (2017) 15 Cal.App.5th 914, 920.)

We generally review an order granting or denying a request to modify child support for abuse of discretion.  (See *Usher, supra,* 6 Cal.App.5th at p. 357.)  This includes modification requests seeking reimbursement of a child's out-of-pocket medical expenses as "additional child support costs" under section 4063. (See *In re Marriage of Rothrock* (2008) 159 Cal.App.4th 223, 236;

14

*In re Marriage of Furie* (2017) 16 Cal.App.5th 816, 825 ["We review a trial court's order for reimbursement of uninsured healthcare expenses for abuse of discretion."].)  Under the abuse of discretion standard, "'[w]e do not substitute our judgment for that of the trial court, but confine ourselves to determining whether any judge could have reasonably made the challenged order.'" (*In re Marriage of Macilwaine* (2018) 26 Cal.App.5th 514, 527.)  Likewise, "[t]he modification of a spousal support order is reviewed on appeal for abuse of discretion.  In exercising its discretion the trial court must follow established legal principles and base its findings on substantial evidence.  If the trial court conforms to these requirements its order will be upheld whether or not the appellate court agrees with it or would make the same order if it were a trial court." (*In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 47.)

B.     *The Family Court Did Not Abuse Its Discretion by Modifying Child Support, Denying Teresa's Request for Reimbursement of Samantha's Medical Costs, and Terminating Spousal Support*

Teresa argues the family court erred by not considering all of the evidence in its calculation of child support, and she asserts she "was completely honest and transparent at all times" with the court.  She further contends the court's imputation of income to her was "derived from thin air," the court failed to properly review her paystubs, income taxes, and cashflows over time, and it used "made-up numbers" from Michael's attorney.

On appeal, "'[i]t is not our role to reweigh the evidence, redetermine the credibility of the witnesses, or resolve conflicts in the testimony, and we will not disturb the judgment if there is

15

[substantial] evidence to support it.'" (*Williamson v. Brooks* (2017) 7 Cal.App.5th 1294, 1300; see *Garcia v. Stoneledge Furniture LLC* (2024) 102 Cal.App.5th 41, 54 ["It is not our role to reweigh the evidence or substitute our factual determinations for that of the trial court."]; *In re Marriage of Destiny & Justin* C. (2023) 87 Cal.App.5th 763, 770 ["we are not at liberty to second-guess the trial judge's firsthand evaluation of [a witness's] credibility"].)  Here, the court found Teresa was not credible or persuasive on many points, and expressly found that "Ms. Kracow's financial disclosures are not reliable."  The court stated her financial transactions with family and friends were "inconsistently identified" and structured more like gifts than loans, her claimed food and utility expenses appeared low or were "belied" by her own bank records, and her testimony on the ownership and remodeling of her house was "internally inconsistent" and "inconsistent with her income and expense declaration."  As we must, we defer to the family court's determination of Teresa's credibility in our review and examine whether its rulings were supported by substantial evidence.

In determining whether a material change has occurred, the first step is assessing the parents' current financial circumstances.  (See *In re Marriage of Hein, supra,* 52 Cal.App.5th at p. 528.)  "[A]n increase or decrease in either parent's income available for child support will affect the guideline amount of child support and, thus, may constitute a material change in circumstances justifying a modification of child support."  (*Id.* at pp. 528-529.)  Income is calculated "from whatever source derived," and "when a parent's annual gross income is unknown, the court shall consider the earning capacity of the parent" in light of the specific circumstances of the parent,

16

including "evidence of the parent's assets, residence, employment and earnings history," among other factors. (§ 4058, subds. (a), (b)(1)(A), (b)(2).) A family court's decision to impute income to a parent for child support purposes is discretionary (see *In re Marriage of Destein* (2001) 91 Cal.App.4th 1385, 1393; see also *In re Marriage of Schlafly* (2007) 149 Cal.App.4th 747, 753), and "[u]nder this standard, we consider only 'whether the court's factual determinations are supported by substantial evidence and whether the court acted reasonably in exercising its discretion.'" (*In re Marriage of Macilwaine, supra,* 26 Cal.App.5th at p. 527.)

Here, the family court reasonably exercised its discretion by determining that Teresa's income was closer to $4,700 per month than the $3,500 she claimed in her income and expense declaration, constituting a material change in circumstances from the previous child support order. The court thus modified monthly child support from $532 to $69. Substantial evidence supports the court's order. Specifically, the family court had evidence before it that Teresa had significant unreported deposits into her bank accounts each month; she did not comply with loan disclosure requirements; she was undertaking an undisclosed $450,000 remodel of her residence and resisted identifying the source of funds; and that "financial contributions of others to [her] lifestyle" constituted "an undisclosed extremely significant financial infusion into [her] lifestyle." "'The ultimate determination of whether the individual facts of the case warrant modification of support is within the discretion of the trial court'" (*Usher, supra,* 6 Cal.App.5th at p. 358), and "[a] child support award will not be overturned absent a showing of a clear abuse of discretion resulting in prejudicial error." (*S.P. v. F.G.* (2016)

17

4 Cal.App.5th 921, 931.) Teresa has not shown the family court abused its discretion by modifying the child support order.

Nor has Teresa demonstrated the family court abused its discretion by denying her medical reimbursements request for Samantha. Section 4062, subdivision (a)(2), provides that the court shall award "additional child support" for "reasonable uninsured health care costs for the children," which may be enforced by a request for order for additional child support under section 4063. In our discretionary review of a family court's order on reimbursement of uninsured healthcare expenses, "'[w]hen two or more inferences can reasonably be deduced from the facts, we will not substitute our deductions for those of the trial court. [Citation.] The burden is on the complaining party to establish abuse of discretion. [Citation.] The showing on appeal is insufficient if it presents a state of facts that affords only an opportunity for a difference of opinion. [Citation.] [¶] We limit our review of the trial court's findings of fact to determin[ing] whether they are supported by substantial evidence. [Citation.] "On review for substantial evidence, we examine the evidence in the light most favorable to the prevailing party and give that party the benefit of every reasonable inference. [Citation.] We accept all evidence favorable to the prevailing party as true and discard contrary evidence."'" (*In re Marriage of Furie, supra,* 16 Cal.App.5th at p. 825.)

Although Teresa argues the family court failed to address each medical expense item separately, the record shows the court examined the receipts on the record and found no previously unaddressed reimbursable expenses. The court explained, "we need to do this somewhat methodically," and that it would disregard amounts incurred before the divorce judgment or that

18

the court had already ordered Michael to pay, as well as health insurance premiums.  The court explained "the [section] 4063 provision is designed to address expenses that come up after the judgment that are not specifically enumerated and already ordered by the court," and health insurance premiums were "already accounted for in the calculation of the monthly child support."  The court found that none of Teresa's expenses constituted reimbursable expenses and instructed her that to the extent she "thinks that she didn't receive all the money[,] [t]hat is a separate issue and should be addressed in accounting."  Under the circumstances, Teresa has not met her burden to establish the family court abused its discretion.

Teresa also argues the court erred by terminating spousal support.  She contends the family court erred in its spousal support ruling by not considering all the evidence in its calculation of spousal support and by not considering all the statutory factors outlined in section 4320.

Section 4320 requires the court to consider 14 factors in ordering spousal support.  As relevant here, section 4320, subdivision (a), includes "[t]he extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage," including "[t]he marketable skills of the supported party [and] the job market for those skills" (*id*., subd. (a)(1)).  Subdivision (b) includes "[t]he extent to which the supported party contributed to the attainment of an education, training, a career position, or a license by the supporting party."  Subdivision (c) includes "[t]he ability of the supporting party to pay spousal support, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living."  Subdivision (e)

includes "[t]he obligations and assets, including the separate property, of each party." Subdivision (h) includes "[t]he age and health of the parties." Subdivision (n) includes "[a]ny other factors the court determines are just and equitable."

"'"In making its spousal support order, the trial court possesses broad discretion so as to fairly exercise the weighing process contemplated by section 4320, with the goal of accomplishing substantial justice for the parties in the case before it.' [Citation.] In balancing the applicable statutory factors, the trial court has discretion to determine the appropriate weight to accord to each. [Citation.] But the 'court may not be arbitrary; it must exercise its discretion along legal lines, taking into consideration the applicable circumstances of the parties set forth in [the statute], especially, reasonable needs and their financial abilities.' [Citation.] Furthermore, the court does not have discretion to ignore any relevant circumstance enumerated in the statute. To the contrary, the trial judge must both recognize and *apply* each applicable statutory factor in setting spousal support. [Citations.] Failure to do so is reversible error."'" (*In re Marriage of Geraci* (2006) 144 Cal.App.4th 1278, 1297.)

Teresa argues the family court failed to consider her medical conditions, her age being 10 years older than Michael, her contributions to his education and career, and that she was only a provisionally qualified interpreter with lower priority and a limited scope of work compared to certified interpreters. But the record shows that Teresa testified to her age, provisional accreditation, and medical conditions in her July 2023 hearing testimony, which the judge in Department 7 reviewed before making the spousal support order. At the July hearing, Teresa

20

also asserted that she put Michael through school, which Michael refuted in his testimony at that hearing.  Michael testified that he "credit[ed] her for helping to take care of the kids and manage the house while [he] was going to school full time and working full time, but monetarily, no, there has been no assistance from her."  The family court was within its discretion to reject Teresa's testimony on these factors.  (See *In re Marriage of Grimes & Mou* (2020) 45 Cal.App.5th 406, 416.)  Rather, the court in its written findings after the hearing on the section 4320 factors emphasized Teresa's estimated income relative to Michael's, her failure to disclose income and assets, and her lack of credibility.

Teresa argues it was reversible error for the family court not to recite each statutory factor it was applying.  But the law does not require that:  "Although by statute the trial court must consider section 4320 factors in deciding whether to modify a spousal support order, the statute does not purport to require the court to address each factor expressly" or to "identify each factor and set forth in writing or on the record how it has weighed each of them."  (*In re Marriage of Diamond* (2021) 72 Cal.App.5th 595, 602.)  In all events, although the court did not specifically identify each statutory factor it was considering, it is clear that the financial considerations it examined go squarely to section 4320, subdivisions (a), (c), and (e) (earning capacity, income, and assets), and the credibility and nondisclosure considerations go to subdivision (n) ("[a]ny other factors the court determines are just and equitable").  Under the circumstances, the court was well within its discretion to prioritize these factors.  (See *In re Marriage of Geraci, supra,* 144 Cal.App.4th at p. 1297 [court should examine "'the applicable circumstances of the

parties set forth in [the statute], especially . . . their financial abilities'"].)

The court did not abuse its discretion by crediting Michael's evidence over Teresa's and terminating spousal support based on the evidence before it. The family court reasonably exercised its discretion by estimating Teresa's income at $4,700 per month rather than $3,500, which constituted a material change in circumstances from the previous spousal support calculation. The judge in Department 7 reiterated that Teresa had "significant credibility issues" with her financial documentation, disclosures, and testimony. In our review, "[w]e may not reweigh the evidence and are bound by the trial court's credibility determinations." (*In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 94; see *In re Marriage of Minkin* (2017) 11 Cal.App.5th 939, 953 [as the trier of fact, the trial court ""is the sole judge of the credibility and weight of the evidence""""].)

## DISPOSITION

The orders of the family court are affirmed. Michael is entitled to recover his costs on appeal.

MARTINEZ, P. J.

We concur:

SEGAL, J.                          STONE, J.

22